## Stewartson *against* Watts.

8 w 392
187 165

When some evidence has been given of the existence of an agency, it is competent to give in evidence the acts and declarations of such agent respecting the subject-matter of his authority, and whether his agency had then ceased, or was continued, must be submitted as a matter of fact to the jury, with the direction, that if his authority had ceased, his acts and declarations are to be disregarded.

A judicial sale of land divests it of the lien of a sum of money subject to the payment of which it was sold and conveyed to the defendant as whose property it was sold by the sheriff.

ERROR to the common pleas of *Susquehanna* county.

Thomas Stewartson surviving executor of Henry Drinker, deceased, against Andrew Watts. This was an action of ejectment for one hundred and eighteen acres of land. The title to the land had been in Henry Drinker, the plaintiff's testator, and his executors by deed dated the 3d of April 1812, conveyed it to Joseph Tanner, with this clause in the deed, " to have and to hold the said land, &c. to the said Joseph Tanner, his heirs and assigns, subject to the payment of the said sum of twenty-eight hundred and four dollars and twenty-one cents, intended to be secured by mortgage as aforesaid." The plaintiff then gave in evidence a mortgage for the money dated the same day, to secure the payment of the same sum on the 1st of October 1812. A *scire facias* upon this mortgage in 1827, and served on W. Dimock and S. Tucker, and a judgment and sale to the plaintiff in 1827, and a deed of the sheriff to him.

The defendant then gave in evidence a deed from Joseph Tanner to John Mitchell for one-half of the land, and another to Hubbel Gregory, for the other half of it, dated the 10th of August 1818. This title became, subsequently, vested in William Mitchell against

[Stewartson v. Watts.

whom a judgment was obtained in 1824; an execution issued and the land was sold by the sheriff to Asa Dimock, and a deed made the 1st of February 1825, who, on the 4th of May 1825, conveyed to the defendant Andrew Watts.

The defendant then called a witness who testified that William Drinker had been the agent of the executors of Henry Drinker, at one time, and that he had been superseded by James C. Biddle, but the witness did not speak with confidence as to the time the agency of William Drinker ceased.  The defendant then offered to prove the declarations of the said William Drinker, that the mortgage money had been paid, and the land released from the payment of the same; and also offered a letter of his to that effect dated in 1828. This was objected to by the plaintiff, but the court overruled the objection, and sealed a bill of exceptions at the instance of the plaintiff.  It afterwards appeared in evidence, that William Drinker ceased to be the agent of the executors of Henry Drinker in 1826.

The material point in the case was, whether the sheriff's sale of the land on the judgment against William Mitchell, divested the lien of the plaintiff as secured by the reservation in the deed and by the mortgage.

The court below (Herrick, president) was of opinion that the sheriff's sale did divest the lien, and the plaintiff was not entitled to recover.

*Woodward*, and *Williston*, for plaintiff in error, contended that the reservation in the deed was of an estate in the land such as would not be divested by a judicial sale, and cited 2 *Watts*, 377; 10 *Vin. Ab.* 213, tit. Estate, letter E, pl. 8; *Ibid.* 220, letter H, pl. 11.

*Greenough* and *Case*, for defendant in error.

The opinion of the Court was delivered by

ROGERS, J.—We perceive no error in admitting the testimony contained in the first and second bills of exceptions.  When the testimony was received, there was some evidence, however slight, that at the time referred to, William Drinker was employed by the executor as a general agent to collect all moneys belonging to the estate, and otherwise to superintend the estate of Henry Drinker, deceased.  To ascertain whether the purchase-money on the contracts for the Drinker land had been paid, he was the person to whom persons who were interested would naturally resort in the first instance, as to him was entrusted the collection of the money due, and the management of the estate in the county where the lands were situated.  At the time the evidence was received, the court were authorized to believe that the latter was written, and that the declarations were made by an agent acting within the scope of a general authority.  At least there was enough before

VIII.—2 I

[Stewartson v. Watts.]

the court to authorize them to refer the decision of that point to the jury.  There is no principle better settled than that the acts and declarations of an agent bind his principal, when the act is done, or the declarations are made, during the agency, and are within the scope of his authority.  But after the evidence was admitted, other testimony was given by the plaintiff, which rendered it extremely doubtful whether Drinker had not ceased to be agent at the time; but notwithstanding this evidence may have, in the mind of the court, greatly preponderated, yet it would have been error to have given an affirmative answer to the plaintiff's first proposition.  It was a matter of fact which the court was bound to submit to the jury.  Instead of the request which was made for a direction that there was *no evidence* before them sufficient to warrant the presumption that the money had been paid, &c., their only remedy was a prayer for an instruction to the jury, that if they believed Drinker had ceased to be the agent, they should disregard that part of the testimony which related to his acts and declarations.  The inquiry which Drinker, in his letter says he made, must be understood as referring to information derived from a search into his own books, papers or accounts, rather than to a knowledge of the fact from other sources.  Such an inference would be reasonable, taking it in connection with his relation as a general agent of the estate, together with the peculiar nature of his duties.  The reference to a release, contained in the letter, although no written release was in existence, was calculated to mislead Dimock, who made the inquiry from no idle curiosity, but for the benefit of a person who was either in treaty for the purchase of the property, or was about to expend his money in its improvement.  For these reasons we are of the opinion the evidence was properly received, and that there was no error in this part of the charge.

But the most material question arises on the answer of the court to the plaintiff's second point.

At the time the Jeffries and Nuttle judgment was rendered the title to the lot was in William L. Mitchell, by a conveyance from William Mitchell.  But when the *fieri facias* was issued, and the levy and condemnation were had, the property having been reconveyed to William Mitchell, the debtor, was liable to seizure and sale for the payment of the judgment.  Under these circumstances, it will not admit of question that the title to the premises passed to the purchaser at the sale, and that, by the sheriff's deed, the purchaser acquired all the interest of the debtor, however and whenever acquired.  It is immaterial, so far as his title is concerned, whether the deed of reconveyance was recorded or not.  By a series of decisions, from which we feel no disposition to depart, it has been firmly settled that, by a judicial sale, the purchase-money is substituted for the land, and is distributable among the lien creditors, according to their priority.  In the case of the Presbyterian Church *v.* Wallace, 3 *Rawle* 133, it was held that a sale by the

[Stewartson v. Watts.]

sheriff of part of the mortgaged premises, under a younger judgment, by one claiming title under the mortgagor, exonerates the land sold from the lien of the mortgage. It is hardly questionable, under the authority of this decision, that the mortgagee might have insisted on the appropriation of the money raised by the sheriff's sale, to the payment of the mortgage. And this is an argument of no inconsiderable force against the plaintiff's title; for to suppose, as is said, and the case cited, that the mortgagee may resort to the purchase-money or the land, at his pleasure, is an evident inconsistency. The purchase-money can be substituted for the land, and distributed among the lien creditors only on the supposition that the sale has divested their right to any interest in or incumbrance on the land which has undergone the process of a judicial sale. Here the mortgagee had implied, if not actual notice, of the sale of the mortgaged premises, although he may not have known, with any certainty, of the reconveyance to the former owner, as whose it was sold. But of the true state of the title he had as good an opportunity of informing himself as the purchaser, who ran the risk of the title, and whose rights are as much entitled to the protection of the court, and are as favourably regarded as the rights of creditors. The mortgagee had the right to have the purchase-money appropriated to the payment of the mortgage, and it would be most unjust to allow him to resort either to the land or the money, at his own pleasure. This would, in effect, enable him to cast the burthen either on the younger lien creditors, or the purchaser, as he might judge best calculated to advance his own interest. Such a privilege would place creditors and debtors at the mercy of the mortgagee, and it would not be long after it was known, before we should have instances of the most glaring abuses of the power. It is believed that sound policy requires that property purchased at a judicial sale, should pass into the hands of the purchaser clear of all liens, as the chances are thereby immeasurably increased that, under such sale, the property will bring its full value. This result, it is supposed, is for the benefit of all who have an interest in the property, and will in a great measure prevent what will and has, on any other system, taken place, speculation by the artful and designing bidders, at the expense of creditors and debtors. It was to correct this, which was felt to be a burthensome and growing evil, that this principle was gradually introduced, and the experience of every day tends to show the wisdom of the rule. Occasional inconvenience, and sometimes instances of apparent injustice and hardship may occur, and this it is impossible in all cases to prevent; and the only remedy for this, is increased vigilance on the part of the creditors. But this is no reason for a relaxation from the rule, until the exceptions will become more numerous than the rule itself, and introduce that uncertainty in the title of purchasers which it was intended to avoid. Creditors, in general, have just cause of gratulation, when the full value of the land is substituted

for the land, which, at most, is to be regarded as a security for the debt. Exceptions have, from time to time, been made, to which the court has reluctantly yielded; as where the divestiture of the lien would work a manifest injury, which its strict enforcement would contravene, the directions in last wills and testaments, where liens are created as permanent provision for wives and children, or where, from the nature of the incumbrance, they will not readily admit of valuation, and where it is plain they were intended to run with the land. In these, and similar cases, exceptions have been allowed; but this case comes within none of the classes enumerated and decided, and there is no reason to exempt it from the operation of the rule.

But it is said that the sale does not divest the lien, because of the *habendum* in the deed, "to hold, &c., subject to the payment of said sum of twenty-eight hundred and four dollars, &c., intended to be secured by a mortgage as aforesaid." This, it is contended, is a reservation of an estate in the vendor, which, according to the case of Catlin *v.* Robinson, 2 *Watts* 273, does not pass to the sheriff's vendee, because, as is there held, a judicial sale does not divest titles, but only liens and incumbrances. If this were a reservation of an estate, it would fall within the principle of the case cited; but the most that can be made of it is, that it is an agreement by the vendee, that until a mortgage can be executed in due form, the vendor shall have an equitable mortgage or lien on the premises. Catlin *v.* Robinson was ruled on the authority of the case of Anwater *v.* Mathiot, 9 *Serg. & Rawle* 402. In that case it was held, that the judgment creditors of a vendee of land, who has paid part of the purchase-money and has possession of the land, but has received no deed, are entitled to the proceeds of the sale of his title under an execution, in preference to the vendor. It differs from the present in a very material particular. Here the legal title is conveyed to the vendee without the reservation of an estate in the land, but with a stipulation, because it is nothing more, that the unpaid purchase-money shall remain as a lien, in the nature of an equitable mortgage. There is nothing in the agreement which would prevent the mortgagee from asserting his right to the money raised at the sheriff's sale. It would, therefore, be inequitable and unjust that he should be permitted now, at his own will and pleasure, to throw the whole burthen of this lien on the purchaser at the sheriff's sale. It may be, perhaps, necessary to observe that this case occurred before the passage of the act, which put mortgages on a different footing in this respect from judgments.

The error assigned in relation to the third point, has not been sustained.

Judgment affirmed.