## Case No. 9,315.

### MAURY v. TALMADGE.

[2 McLean, 157.] [1]

Circuit Court, D. Ohio. July Term, 1840.

CARRIERS—STAGE—PASSENGERS—CONTRACT AS TO NUMBER—CUSTOM—DRIVER—NEGLIGENCE —ACCIDENT—INJURY.

1. A contract, made by stage passengers with the agent of the line as to the number of passengers, can not be proved by a passenger, who, at another part of the route, took his seat, in a suit by him against the proprietor.

2. Being no party to the contract, and, in fact, having no notice of it, it afforded no inducement to him to become a passenger.

3. A general custom, as to the number of passengers conveyed, may be proved, but not the practice established on the route.

[1] [Reported by John A. Hayward, Esq., and Geo. C. Hazleton, Esq.]

[1] [Reported by Hon. John McLean, Circuit Justice.]

4. The declarations of a driver, whose conduct is not implicated, that the stage was topheavy, and overloaded, not evidence.

[Approved in Franklin Bank v. Stewart, 37 Me. 532.]

5. The words of the agent, to be evidence, to charge the principal, must be a part of the res gestae.

6. Stage proprietors are bound to use the greatest care for the safety of passengers. The least neglect by the driver, or want of skill, makes them liable.

[Cited in Treadwell v. Whittier, 80 Cal. 589, 22 Pac. 271; Sanderson v. Frazier, 8 Colo. 79, 5 Pac. 632. Approved in Frink v. Potter, 17 Ill. 410. Cited in Taylor v. Grand Trunk Ry. Co., 48 N. H. 316; Budd v. United Carriage Co. (Or.) 35 Pac. 663; Farish v. Reigle, 11 Grat. 712.]

7. The proprietors are responsible if the coach is driven out of the usual track, and an injury is, consequently, done.

8. It is the duty of a driver to caution the passengers when he is about to pass over a piece of road, bridge, &c., attended with danger.

[Cited in Terre Haute & I. R. Co. v. Buck, 96 Ind. 357.]

[This was an action for damages for personal injury by M. T. Maury against Talmadge.]

Messrs. Ewing and Stanbery, for plaintiff.
Messrs. Wright and Hunter, for defendant.

OPINION OF THE COURT. This action was brought to recover damages for the upsetting of the defendant's stage, in 1839, in which the plaintiff, being a passenger, was much injured. The upset was near Somerset, on the route from Chillicothe to Zanesville; and is charged to have been caused by the want of skill, and negligence in the driver, overloading the stage, and want of lights. Plea, not guilty. The plaintiff offered evidence to prove that, at Maysville, in Kentucky, the southern terminus of the route, a special contract was made with the agent of the defendant, by the passengers, that not more than six passengers should be admitted inside the stage, and one on the outside. The plaintiff took his seat at Portsmouth, in a line of the defendant's, which connected with the Maysville and Zanesville line, at Chillicothe. The above evidence was overruled by the court, on the ground, that the plaintiff was not a party to the contract, and could claim no benefit under it. There is no proof that he had any knowledge of the contract; and, of course, it could have formed no inducement with him to travel in the line. He took his seat with no other pledge or guaranty from the proprietor, than that which the law implies.

On the part of the defendant, the driver was examined as a witness, there being no objection to his competency by the plaintiff. The defendant offered evidence to prove that it was the custom on that route to carry as great a number of passengers as were in, and on, the stage. This was objected to by the plaintiff, and the court sustained the objection. The defendant can not give, in evidence, a custom or practice established by himself, in his own justification, or in extenuation of the damages. The practice may be such as the law does not warrant, and, in that case, it should operate against the defendant. A general custom, as to the number of passengers conveyed by a coach of the same size, on other routes, may be proved; but this, in each case, must be regulated by the kind of road over which the stage is to pass. A number of passengers may be conveyed, by what is called a nine-passenger coach, on a level and paved road, with safety, which would be extremely hazardous on a road unpaved, and hilly. In a case of this kind, therefore, there can be no unvarying custom, as to the number of passengers. The number must be regulated by the character of the road; and the ordinary danger of stage travel must not, in any degree, be increased by overloading the stage. The question may be asked of drivers, acquainted with the road, what number of passengers could be safely conveyed by a nine-passenger coach, in the state the road was at the time of the upset. By way of rebutting evidence, the plaintiff offered to prove the declarations of the driver, who preceded the one implicated, that the stage was topheavy, and overloaded. To this evidence the defendant objected, and the court sustained the objection.

In favor of the admission of the evidence, it was insisted, that it was proper to be received, in proof of a fact connected with the cause. That, in the case of Saltonstall v. Stokes, 13 Pet. [38 U. S.] 181, the circuit court not only permitted the declarations of the driver to be given in evidence, but, also, the declarations of passengers, made in the hearing of the agent, and to him; that, in the case of McKinney v. Neil [Case No. 8,865], at the present term, the declarations of the passengers to the driver, and, also, among themselves, when the coach was about to upset, were proved; that every driver, being an agent of the defendant, and being a competent judge whether the stage was overloaded or not, his declarations on the subject, while driving, are evidence. But the court remarked, that the declarations of an agent are made evidence against his principal only, when they are part of the res gestae. While making the contract, or performing any act in his capacity as agent, he acts in the place of the principal, and what he says respecting the thing then being done, is evidence. But, afterwards, his account of the transaction, though given immediately, is not evidence. Now, if the driver, whose declarations are offered in proof, were the agent of the defendant to load the stage, still, his declarations could not be evidence, as he spoke of a past transaction. He said the stage was topheavy, and overloaded. This referred to the loading of the stage, and not to any act then being done. But the driver was not the agent for this purpose. The agent was the keeper of the stage office at Lancaster, who admitted two additional passengers. What he said, at

the time of making up the load, would be evidence against the defendant. In the case of Saltonstall v. Stokes [supra], the declarations of the driver, at the time of the upset, were proved as a part of the res gestae. And the remonstrances of the passengers to the agent, against the driver, were proper, as notice to him that the driver was not in a state to be trusted. ·This should have led the agent to a strict examination of the condition of the driver, and was evidence, the same as if the remonstrances had been made to the proprietor of the line. Remonstrances of the passengers, to the driver, are also evidence, as going to warn him of danger, which should increase his vigilance. And so, as evidence of a fact, tending to show that the stage was not suddenly upset, the remark of a passenger, that the stage was going over, was proved. If the driver, implicated in this case, at the time of the upset, had assigned, as the cause of it, the overloading of the stage, the declaration would have been so connected with the disaster, and explanatory of it, as to be admissible in evidence; it would have been a part of the res gestae.

The main question in the case, is, whether the stage was overloaded. And, to prove this fact, the declarations of a driver, who is a competent witness, and whose conduct is, in no respect, implicated in the case, are offered in evidence; for this can be the only ground of admitting them. The counsel say, they wish these declarations to be received merely as a fact—not to prove the truth of the fact. But how can they be admitted on this ground? Neither the proprietor of the line, nor the driver, who is charged with negligence and want of skill, was present. The declaration, then, can not operate as notice to any one, so as to have the least bearing in the case. And, if the declarations be admissible, it must be with the view of establishing the fact, that the stage was overloaded. The court, therefore, overrule the evidence.

LEAVITT, District Judge (charging jury). The law relative to the liability of stage proprietors has been so fully expounded in another case submitted to, and passed upon, by this jury at the present term, that it will be unnecessary, on this occasion, to enter at large upon the consideration of that subject. As the present case, however, differs from the one referred to, in the facts connected with it, and the ground on which a recovery is sought for, it may not be amiss to call your attention, very briefly, to some general principles that may serve to guide you in your deliberations. It is a principle which commends itself to the reason and common sense of every man, that he who engages in the business of conveying passengers, by stage-coaches, or otherwise, for a reward, takes upon himself certain legal responsibilities, which the law will recognize and enforce. In the absence of an express contract to that effect, the law implies an un-

dertaking to convey his passengers with safety, so far as human foresight and care can accomplish that object. And, it is well settled that, if an injury happen, which is fairly chargeable to the least negligence or want of skill, or prudence, on the part of the proprietor or his agents, he is answerable for it. Judge Story, in his treatise on Bailments, lays down the law as follows: "If he (the driver) is guilty of any rashness, negligence or misconduct, or is unskillful, or deviates from the acknowledged custom of the road, the proprietors will be responsible for any injuries resulting from his acts. Thus, if the driver drives with reins so loose, that he can not govern his horses, the proprietors of the coach will be answerable. So, if there is danger in a part of the road, or in a particular passage, and he omits to give due warning to the passengers. So, if he takes the wrong side of the road, and an accident happens from want of proper room. So, if by incaution, he comes in collision with another carriage." On the other hand, it is equally well settled, that coach owners do not guaranty the safety of their passengers, at all events, and against all hazards. They are not liable for injuries which result from accident or misfortune, where there has been no negligence or default. Keeping these general principles in view, it will be the duty of the jury to make the application of them to the case now under consideration.

The grounds on which it is insisted the defendant is responsible for the injury, which the plaintiff has suffered, are the overloading of the coach, and the negligence and carelessness of the driver. As it relates to the allegation in the declaration, that the accident happened from the want of lights upon the coach, it is presumed the jury will find no difficulty in arriving at the conclusion, from the evidence, that the moon was shining when the upset happened; and that there was no necessity for lights; and that no negligence is imputable to the defendant, on this ground. In this view of the case, the inquiries of the jury will, in the first place, be directed to the two points indicated, namely, the overloading of the stage, and the carelessness and negligence of the driver.

Without attempting to present, in detail, the evidence of the several witnesses who have testified in the case, it will be sufficient for the court to give a concise view of the material facts, as they are understood to be established. In October last the plaintiff, a lieutenant in the navy of the United States, at Chillicothe, in the state of Ohio, took a seat in one of the defendant's coaches, for Wheeling. On its arrival at Lancaster, the coach contained nine passengers. At that place the defendant's agent, contrary to the remonstrances of some of the passengers, consented to take three others; two of whom took their seats with the driver, and the third one, then in a state of intoxication, was placed on the top of the coach. They

arrived at the town of Somerset about 12 o'clock at night, which place they left, after changing horses, with the same passengers, namely—nine inside, and three outside, making, with the driver, thirteen persons, and without an unusual quantity of baggage. Owing to an obstruction, occasioned by the construction of a turnpike, on the route of the old road, a new road, for some distance from Somerset, had been completed a few days before, along which the stage had passed several times. For the distance of about one hundred yards, the new road was made along the side of a slope, by digging down the higher portion of the route of the road, and placing the excavated earth on the lower side, so as to produce a level surface. The width of this part of the road was eight or nine feet, and the track, passed over by carriages, was settled, and tolerably firm; but the part next to the descent of the slope, being made of removed earth, recently placed there, was unsettled and soft. In passing over this part of the new road, at a very slow rate, and when it was slightly ascending, the right wheels of the coach left the beaten track, and, for a distance of twenty-five feet, departed gradually from the track, until they were from two to four feet away from it; the right wheels, in the mean time, sinking deeper and deeper in the soft earth, till the coach upset. Two witnesses stated that the driver, at the time the wheels left the track, was attending to a conversation going on between some of the passengers. One witness testified, that he thought the driver made an effort to turn the horses on to the track, when he discovered the coach had left it. It appeared that it was perfectly in the power of the driver to have stopped the coach, and to have given the passengers an opportunity to get out, after leaving the track, and before the upset. It was also proved, that the driver said, shortly after leaving Somerset, that the coach was too heavily laden; and, as a witness at the stand, he stated that he considered the load dangerous for that part of the road. The plaintiff, in conversation with Dr. Stone, after the accident, said he did not blame the driver; but that the agent was censurable, for overloading the coach. It was conceded, that the general character and habits of the driver were good, and that he was a man of experience and skill in his calling.

At the time of the upset, the plaintiff was sitting with the driver, and at his right hand side. The plaintiff was thrown several feet from the stage. The physicians who saw, and attended him at Somerset, testified that one of his knees was dislocated, upward and downward; the ligaments of the kneepan torn asunder, leaving the kneepan an inch out of its natural position; and, also, that there was a longitudinal fracture of the thigh bone. Two eminent surgeons of Philadelphia, who examined the plaintiff's knee some months after the accident, testified

that, in addition to the injuries above stated, there was a vertical fracture of the patella, or kneepan. They also state that the joint is greatly deformed, and the injury so great and permanent in its character, as to disable the plaintiff, for life, from the performance of his duties as a lieutenant in the navy. He was, previously to the accident, possessed of a robust constitution, and enjoyed excellent health. He was detained at Somerset 70 days, in the hands of surgeons, confined generally to his room, and suffering a good deal of pain. At the expiration of that period, he was able to move about, with the aid of crutches, and set off, by private conveyance, for his residence in Eastern Virginia. The expenses of plaintiff, during his detention at Somerset, for medical attendance, boarding, nurses, &c., amounted to about $250.

On this state of facts in relation to the upset, it is insisted by the plaintiff's counsel, that the disaster is attributable to the excessive weight upon, and especially the top-heaviness, of the coach; or, if not fairly chargeable to this cause, it is to be imputed to the carelessness and negligence of the driver, or to a combination of both these causes; and that, in either case, the defendant is responsible for the consequences. Whether the coach was, in fact, overloaded, must be decided by the jury from the evidence, and with reference to the particular circumstances connected with the case. It is impossible to lay down any general rule, by which the inquiry, whether a coach is excessively laden, can be satisfactorily tested. The character and condition of the road, over which a vehicle is to pass, will be the main consideration in such an inquiry. It will be obvious to the jury that, upon a properly graded and well-finished turnpike, there will be no great danger of the upsetting of a carriage, from any weight that may be put on it; while upon one of the common roads of the country, especially over a hilly region, there might be very great danger in conveying a weight, which, under other circumstances, could not be regarded as excessive. It will, therefore, be the duty of the jury, in coming to a conclusion on this point, to take into consideration the number of passengers, the weight of baggage, the general character of the road along which the defendant's stages run, and, especially, the portion of it over which the coach was passing, when this accident occurred. And, if the jury believe it can be fairly referred to the improper loading of the coach, there can be no question but what the defendant is legally answerable for the consequences. It is clearly the duty of a stage proprietor to see that the safety of his passengers is not put at hazard by an excessive load; and, if he disregards or violates his duty in this respect, he is liable for any injury that may follow. Nor can it be regarded as a legal excuse for such misconduct, that loads of the same, or even greater weight, have

been previously transported, with safety, upon the same road.

As to the other position taken by the counsel for the plaintiff, namely, that there is proof of carelessness and inattention on the part of the driver, in this particular case, and that this may be regarded as the cause of the overturn, it is only necessary to remark that, if the jury believe this point to be established by the proof, then, on the principles already laid down by the court, they will be justified in returning a verdict for the plaintiff. On this point, it is insisted that the driver, without any necessity or excuse for so doing, permitted the coach, while proceeding at a slow rate, and upon ground ·slightly ascending, to depart from the track, till the right wheels sunk so deep into the earth as to cause the upset. The jury will observe, that the law holds a driver to the observance of the strictest care, and the most unremitting vigilance. And, however unexceptionable may be his general character as a driver, if, in a particular instance, he is guilty of carelessness or negligence, whereby an injury occurs to a passenger, his employer, whose agent he is, is accountable.

If, therefore, the jury should come to the conclusion, after a deliberate examination of the testimony, that the coach, owing to the excessive weight put upon it, was unmanageable, in the circumstances in which it was placed, by any power or skill which could be applied or used by the driver, and ·was, therefore, upset; or, if they should believe that the driver, even from a temporary inattention or neglect, permitted the coach to get into a predicament, from which an upset was the inevitable result; or, if they believe that the disaster, in the present case, is referable to these two causes combined, they will find for the plaintiff. If, on the other hand, from an attentive consideration of the facts of the case, as exhibited by the evidence, the jury should be of the opinion that the accident, in question, is not imputable to any impropriety of conduct on the part of the defendant's agent, in loading the stage, or to any negligence or carelessness on the part of the driver, but was, as contended for by the defendant's counsel, the result of mere accident or misfortune, which no human foresight, care or attention could have prevented, the defendant can not be held legally answerable.

·On the subject of damages, it is only necessary to remark that, if the jury should come to the conclusion that the plaintiff has made out his case, in accordance with the principles indicated by the court, it will be competent for them to return a verdict for any amount they may think just, within the limit of the sum laid in the declaration. In the assessment of damages, the jury is not restricted to the actual expenditures of the plaintiff, in consequence of the injury received, and compensation for the loss of time; but may properly take into consideration the nature and extent of the injury, and its probable bearing and effect upon his prospects in life, in reference to the profession which he has adopted. The subject of damages, however, belongs so exclusively to the jury, that it would not be proper for the court to enlarge upon it. The case is committed to the jury, with the fullest confidence that they will give it the most mature consideration, and return such a verdict as will acquit themselves, satisfactorily to their own consciences, of the solemn responsibility resting upon them.

The jury returned a verdict for the plaintiff, and assessed his damages at $2,325.