# Hiester *versus* Green.

*Liens created by agreement of parties, who bound by.— What liens are divested by sheriff's sale of land.—Liens not created by implication.*

1. Though equitable liens are not favoured by the law of Pennsylvania, yet the parties to deeds of conveyance may, *by clear and express words,* create liens upon land, either for purchase-money or for performance of collateral conditions, which will be binding between themselves and their privies: but such liens will be divested by subsequent sheriffs' sales, unless they are in the nature of testamentary provisions for wives and children, or are incapable of valuation, or are expressly created to run with the land.

2. But a recital on the face of the title that the purchase-money remains unpaid and is to be paid annually, does not of itself create such a lien.

3. Hence, where a widow to whom was devised, during widowhood, the use of a house and lot, released to a son of testator, the devisee in remainder, all her right and interest under the will, in consideration of the payment of an

[Hiester *v.* Green.]

annuity to her yearly, without *expressing* in the conveyance an intention to charge it as a lien on the land, the law will not imply such an intention, and hence no such lien is created thereby, as against a purchaser at sheriff's sale as the property of the son.

ERROR to the Common Pleas of *Lancaster county.*

This was an amicable action in debt between Cynthia E. Green and Isaac E. Hiester, in which the following case was stated for the opinion of the court :—

The will of Evan Green, who died in 1854, was proved October 7th 1854, and contains, *inter alia,* the following :—

"Item 2. I will and bequeath to my beloved wife, Cynthia E. Green, the free and uncontrollable use of the dwelling-house and lot of ground in which we now reside, on Front street, Columbia, with the avails and rents accruing therefrom, for and during the time she remains my widow, or during her natural life, whichever may first take place, she paying the taxes and keeping the same in good repair, also all the goods and furniture that she may choose for her own use and convenience, any surplus of furniture to be sold at public vendue with her free will and consent, and the amount of sales applied to the same purposes as any other part of my personal property."

"Item 5. I will and bequeath to my son, Amos S. Green, my brick house and lot of ground in which we now reside, he to receive the same from and after the widowhood or decease of my said wife, as specified in item second."

May 20th 1857, the following paper was executed by Cynthia E. Green:

"Whereas, in and by the second item of the last will and testament of Evan Green, of the borough of Columbia, in the county of Lancaster and state of Pennsylvania, proved October 7th 1854, in the register's office, in the county of Lancaster, it is provided as follows :—

"'Item 2. I will and bequeath to my beloved wife, Cynthia E. Green, the free and uncontrollable use of the dwelling-house and lot of ground in which we now reside, on Front street, Columbia, with the avails and rents accruing therefrom, for and during the time she remains my widow, or during her natural life, whichever may first take place, she paying the taxes and keeping the same in good repair, &c.' Now, I, Cynthia E. Green, the devisee above named, for and in consideration of the payment to me yearly and every year during the continuance of my widowhood, of the sum of one hundred dollars lawful money of the United States, by Amos S. Green, the son of my deceased husband, Evan Green, do hereby release unto the said Amos S. Green, all the right, title, and interest which, under the above-recited item of the will of Evan Green, I am entitled to claim or hold in the dwelling-house and lot of ground therein described.

12 WR.—7

" Witness my hand and seal, this 20th day of May, Anno Domini one thousand eight hundred and fifty-seven.

CYNTHIA E. GREEN. [SEAL.]

Witness present: SAMUEL EVANS,
SELINA G. SLAYMAKER."

" Acknowledged before Samuel Evans, a Justice of the Peace, May 21st 1857, and recorded October 4th 1860, in the recorder's office of Lancaster county, in Record Book Z, vol. 8, p. 629, &c."

Afterwards, on the 4th day of October 1860, Amos S. Green executed to Isaac E. Hiester, a mortgage on said house and lot for $2000, which was recorded the same day in mortgage book No. 16, p. 253. On the 8th day of April 1861, Mr. Hiester issued a *scire facias* on said mortgage to April Term 1861, No. 239, and obtained judgment August 26th 1861, on which was issued a *levari facias* to November Term 1861, No. 95, and *alias levari facias* to January Term 1862, No. 21, on which the sheriff sold the said house and lot January 4th 1862, as the property of Amos S. Green, to Isaac E. Hiester, and executed and delivered a deed for the same March 21st 1862. If upon these facts the court should be of the opinion that the said Cynthia E. Green is entitled to recover from the purchaser at the sheriff's sale $100 per annum, the consideration mentioned in the release to Amos S. Green, then judgment to be entered in her favour for such sum as she may be entitled to (nothing having been paid since May 20th 1861, but the said $100 per annum being paid by A. S. Green to that date), otherwise judgment to be entered for the defendant. The costs to follow the judgment, and either party to be allowed to take a writ of error from the Supreme Court without oath or bail.

The court below, on argument, filed the following opinion:—

" The decision made by a majority of the Supreme Court in Neas's Case, 7 Casey 293, we think governs the question involved in this case. It resembles that case in its features as well as general character, according to the view taken by the court in that case. On one side it is an executed conveyance, so as to pass the title, and on the other it remains executory for the payment of the money. The intention of the parties, that it was to remain a charge on the land, we think is as clearly manifested in the case before us as in the case referred to. Neither do we think that it is a case which falls under the ruling of Sweigart *v.* Beck's Administrators, 8 S. & R. 299, demanding an apportionment of the yearly demand secured by the agreement, and holding the purchaser only liable for the amount which had accrued since the day of sale. We therefore direct judgment to be entered for the plaintiff for the two yearly payments now due,

[Hiester *v.* Green.]

viz., $200." And this was the error assigned here by the defendant.

*Isaac E. Hiester*, the plaintiff in error, submitted that Neas's Appeal was contrary to the settled law of Pennsylvania, and was the opinion of a divided court. He cited and relied on Kauffelt *v.* Bower, 7 S. & R. 65; Sample *v.* Burd, Id. 286; Hepburn *v.* Snyder, 3 Barr 72; Zentmyer *v.* Mittower, 5 Barr 403; and insisted that as Mrs. Green had expressly released "all the right, title, and interest which, under the above-recited item of the will of Evan Green, she was entitled to claim or hold in the dwelling-house and lot of ground therein described," she could not retain a lien for the payment of her annuity.

*H. M. North*, for defendant in error, relied on Neas's Appeal, 7 Casey 293; Hart *v.* Homiller, 11 Harris 39; Bear *v.* Whisler, 7 Watts 147, and Ramborger *v.* Ingraham, 2 Wright 147.

The opinion of the court was delivered, October 20th 1864, by
WOODWARD, C. J.—Neas's Appeal, 7 Casey 293, ruled this cause in the court below, and we are asked to reverse the judgment on the ground that the decree in that case was contrary to the settled law of Pennsylvania, a demand which ought to have been supported by a better exhibition of authorities than the paper-books contain.

Though I dissented from the ruling in Neas's Appeal, I would cheerfully have dismissed my doubts and followed it on the present occasion, had my brethren been agreed in recognising it as law; but as they stand equally divided on the question, I am unwilling to give the casting vote without first re-examining the subject in the light of the authorities.

A distinction might be taken between Neas's Appeal and this case, for all that was alleged there was, that a lien existed for the unpaid purchase-money, which, being divested by the sheriff's sale, was entitled to be paid out of the proceeds, whilst here the allegation is that the lien survived the sheriff's sale and ran with the land. The question here is, not as it was there, one of distribution, but as expressed in the case stated, it is "whether the plaintiff is entitled to recover from the purchaser at the sheriff's sale $100 per annum, the consideration mentioned in the release."

Had Mrs. Green come in upon the proceeds of the sale she would have likened her case to Neas's Appeal; but attempting to support her lien against the purchaser, notwithstanding the sheriff's sale, a reversal of the judgment she obtained would not necessarily trench upon the ruling in that case.

Not to insist, however, upon this distinction, I prefer to discuss the main question common to both cases, to wit, whether

[Hiester *v.* Green.]

purchase-money reserved in a deed but not expressly charged upon the land conveyed, is a lien upon that land.

If it be a lien, it is so by virtue of no principle of the common law, and by no statutory provision, and must therefore be classed as an equitable lien, which arises only when the legal title has been conveyed.

The doctrine of equitable liens, though long prevalent in English and some American courts of chancery, was never intended to be admitted into Pennsylvania jurisprudence. If favoured by what fell from this court in Stauffer's Lessee *v.* Coleman, 1 Yeates 393, and Irvine *v.* Campbell, 6 Binn. 118, it was expressly and very forcibly repudiated in Kauffelt *v.* Bower, 7 S. & R. 64. That was the case of an executed conveyance by a vendor, half the purchase-money received, and bonds taken for the other half, but no judgments entered on the bonds. Under judgments subsequently obtained against the vendee, the land was sold at sheriff's sale, and the vendor claimed the unpaid balance of his purchase-money out of the proceeds of the sale. The masterly opinion of Judge Gibson showed that the doctrine of equitable liens had grown up in England since the foundation of the colonies, and therefore that our ancestors did not bring it with them; that it was opposed to the policy of our legislation; that it was not recognised in the practice of our courts, and that it accorded with neither the professional nor the popular understanding. "The implication," he added, "that there is an intention to reserve a lien for the purchase-money in all cases where the parties do not by express acts evince a contrary intention is, in almost every case, inconsistent with the truth of the fact, and in all instances without exception, in contradiction of the express terms of the contract, which purports to be a conveyance of everything that can pass. The construction, therefore, which, independently of fraud or mistake, reserves an interest against the express language of the parties, is unnatural and unjust."

In Semple *v.* Burd, Id. 286, the same views were repeated against a vendor who held an unrecorded mortgage, and in Megargee *v.* Saul, 3 Whar. 20, the court expressed a very confident trust that it was "unalterably established in Kauffelt *v.* Bower, that there can be no lien in any case where the vendor has conveyed the legal title."

But in these cases there was nothing on the face of the deed to show that any portion of the purchase-money remained unpaid. The formal acknowledgment of its receipt would imply a fully-executed contract on the part of the vendee, and delivery of the deed imported full execution on the part of the vendor. Between parties whose writings wore such a face there was no ground for implying unexecuted covenants, or liens to secure performance of them. But in Bear *v.* Whisler, 7 Watts 144, we

[Hiester v. Green.]

have a conveyance of the legal title, "subject nevertheless to the conditions and obligations contained in a certain article of agreement between the parties bearing date the 13th March last." The agreement here referred to bound the vendee to pay six several bonds of $80 each, and to support the vendor and wife for life. The point ruled was, that the deed was a conveyance on condition, which any party in interest might enforce by ejectment. And this was really all that the case decided; but Judge Rogers took occasion to allude to the doctrine of equitable liens, and approved of the ruling in Kauffelt v. Bower, but intimated that parties may create such a lien, by clear and express words, so as to be binding between themselves and privies.

The next year the case of Stewartson v. Watts, 8 Watts 392, came up. Here was an express charge of the purchase-money upon the land, which was also secured by a mortgage, and a sheriff's sale on judgment junior to the mortgage. The sale occurred before the Act of the 6th April 1830, and the court held the lien, whether created by the words of the deed or the mortgage, to be divested by that sale. Judge Rogers vindicated, with great force of argument, the policy that judicial sales should pass property clear of all liens, but he said the court had yielded to certain exceptions which may be reduced to three: 1st. Where liens are created by last wills and testaments as permanent provisions for wives and children; 2d. Where from the nature of the encumbrance it will not readily admit of valuation; and 3d. Where it is plain from the agreement of the parties that the encumbrance was intended to run with the land. Under one or the other of these heads it was manifestly intended that every lien should fall which was to be saved by judicial decision from the ordinary effects of sheriff's sales. Mortgages and certain other liens were saved by statutes. In the cases of The Episcopal Academy v. Frieze, 2 Watts 16, Barnitz v. Smith, 1 W. & S. 145, we have instances of liens created by the agreement of parties, and divested by sheriff's sales on subsequent liens, so that we are not to forget that something more than the creation of a lien by agreement is necessary to make it survive a sheriff's sale; it must be expressly charged upon the land as an encumbrance manifestly intended to run with it. Bury v. Sieber, 5 Barr 432, was ruled on the doctrine of McCall v. Lennox, 9 S. & R. 310, which was the case of tacking one security to another, whereby a subsequent encumbrance was saved by relation to a prior one, quite a different subject from that we are upon. Dewalt's Appeal, 8 Harris 236, and Hart v. Homiller's Heirs, 8 Id. 248, were instances of liens not divested by sheriffs' sales, and which admit of classification under the heads above stated.

The sum of the authorities is, that though equitable liens are

[Hiester *v.* Green.]

not favoured by our law, yet parties may *by clear and express words* in deeds of conveyance create liens upon land, either for purchase-money or for performance of collateral conditions, which will be binding between themselves and their privies, and such liens will be divested by subsequent sheriffs' sales, unless they are in the nature of testamentary provisions for wives and children, or are not capable of valuation, or are expressly created to run with the land. Now, in view of this state of the law, our immediate question is, whether reciting on the face of the title that the purchase-money remains unpaid, and is to be paid annually, creates such a lien. In Neas's Appeal an intention to create a lien was inferred from the fact that the purchase-money stood in the title. But according to all the antecedent cases, express words were necessary to establish the lien. It never before was treated as a subject for legal implication, and it is manifestly a hazardous inference to make ; for the pecuniary consideration, essential to all bargains and sales, is generally mentioned on the face of the deed, and if it be said to be unpaid, it is notice of *that fact* to a subsequent purchaser, but it is no notice to him of a lien. He may reasonably infer that the vendor trusted the personal credit of his vendee for the purchase-money, or took bonds and mortgages or other security, or at the least, that no lien was intended to be created by the deed because none was expressed. These inferences would seem quite as reasonable as that the parties meant what they did not express—a lien for the unpaid money. When the ill consequences of constructive liens are considered, and it is observed how the legislature and the courts have laboured to furnish record notice of liens, it is going very far to say that parties may, even by their express agreement, create a valid lien, but much too far to imply it from mere notice of non-payment of purchase-money, and very much too far to imply a lien, from that single fact, of such tenaciousness that a sheriff's sale will not divest it. Yet all this must be implied, to support the lien claimed in this case. If notice of unpaid purchase-money be sufficient to create a lien, Kauffelt *v.* Bower ought to have been differently ruled, for the purchaser there had such notice, but the court refused, for the most solid reasons, to imply a lien.

Mrs. Green's deed was a release of all her estate, right, title, and interest in the premises conveyed, and though the consideration is expressed upon the face of the deed, as an annuity of $100, there is not a word to import an intention to charge it as a lien on the land. The policy of the law forbids us to surmise or imagine such an intention. But even if we should guess that she meant to reserve a lien, it would not avail her as against the sheriff's sale, unless we held it equivalent to a first mortgage, which would be carrying judicial implications further than

[Hiester *v.* Green.]

Neas's Appeal or any other case, and beyond the bounds of prudence and reason.

Now, to wit, October 19th 1864, after argument of this case, and full consideration, the judgment of the Court of Common Pleas of Lancaster county is reversed and set aside, and judgment is here entered for the defendant.

THOMPSON, J., dissented.