# Eichelberger *versus* Gitt.

1. A clause in a deed that the land is conveyed subject to the payment of the purchase-money, imposes a lien which may be enforced by equitable ejectment against a defendant in possession claiming title through said deed.

2. A formal receipt for the purchase-money at the foot of said deed is not prima facie evidence that said express lien was satisfied.

3. Possession taken and continued under said deed by the grantee and his assigns is not adverse or hostile so as to give the terre-tenant a title under the statute of limitations freed of said lien for purchase-money.   Such purchasers have a possession similar to what they would hold under articles of agreement for the sale of the land where the purchase money remained unpaid.

4. While an agreement for the sale of lands is merged in a subsequent deed therefor, yet the agreement may be evidence, in an action of ejectment to enforce payment of purchase-money bonds, to show that said bonds were stipulated for and given for purchase-money, though the deed, executed in consummation of the agreement, subject to payment of purchase-money, made no reference to the bonds.

·. 5. For the same general purpose, and to show that said bonds were not paid, the will of the grantor, proved long subsequent to the deed, and the proceedings in the settlement of his estate, and of the estate of one of his devisees to whom the bonds were awarded in distribution, may be admissible in evidence in such action.

[Eichelberger *v.* Gitt.]

6. For the same general purposes, and in order to further connect said bonds with the deed, parol evidence may be admissible.

7. Under the Act of April 27, 1855 (P. L. 368), the period of limitation runs from the time the charge became due and payable.

May 31st 1883.    Before GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.   MERCUR, C. J., and PAXSON, J., absent.

ERROR to the Court of Common Pleas of *Adams county:* Of May Term 1883, No. 12.

This was an action of equitable ejectment brought January 25th 1882, wherein, by amendment, the plaintiffs were Amos Myers and A. F. Gitt, administrators c. t. a. of Henry Gitt, deceased, for the use of Edmund C. Gitt, trustee, now for the use of said Edmund C. Gitt, in his own right, against Henry Eichelberger, Rufus A. Eichelberger and Henry Coleman, defendants, to enforce payment of ten bonds of $200 each, representing a balance of purchase-money, alleged to be due upon a tract of land in Oxford township, known as the Oak Grove Farm.   Plea, not guilty.

On the trial, before McCLEAN, P. J., both parties claimed through Henry Gitt, who, it was admitted, owned the tract in fee simple on and prior to March 1st 1849.   On that day, by articles of agreement under seal, the said Henry Gitt sold the tract in question to his son Abdiel F. Gitt for the consideration of $5,915, payable as follows : $2,000 to be paid at the distribution of Henry Gitt's estate, after his death, among his children ; the balance to be paid in annual instalments of $200 each, the first payment to be made April 1st 1852 ; bonds to be given for said purchase-money, " the bonds to be a lien on said farm until paid ;" at the distribution of Henry Gitt's estate, Abdiel F. Gitt to receive as cash as many of the bonds falling due last and unpaid, " as it may require to equalize him in his legacy with the other heirs."

On the date of said articles of agreement, Abdiel F. Gitt executed and delivered to Henry F. Gitt eighteen bonds of $200, and one bond for $115, payable annually on April 1st, in each year, from 1853 to 1871, inclusive.   The ten bonds in suit were those due from 1853 to 1862, inclusive.

Abdiel F. Gitt took possession under the agreement.

By deed, dated December 21st 1853, the said Henry Gitt and Nancy, his wife, for the recited consideration of $5,915, granted and conveyed the tract in question to Abdiel F. Gitt and his heirs.   At the end of this deed, immediately above the signatures, was this clause : " However subject to the payment of five thousand nine hundred and fifteen dollars, the purchase-money."   At the foot of the deed was a receipt in the usual

8 OUTERBRIDGE.—5

form, but without date, signed by Henry Gitt for the sum of $5,915 "in full of the consideration named in above indenture." This deed was produced by defendants upon the plaintiffs' call.

By deed, dated December 2d 1872, Abdiel F. Gitt granted and conveyed the tract in question, for the recited consideration of $12,000, to Henry Eichelberger and Rufus A. Eichelberger, defendants in this action.

The plaintiffs claimed that ten of the said bonds given by Abdiel F. Gitt to Henry Gitt for purchase-money, being those in suit, have never been paid; that by the express clause in the deed from Henry Gitt to Abdiel F. Gitt, produced by the defendants, and through which they claim, the property was conveyed subject to the lien of said purchase-money, and that they, the plaintiffs, were entitled to enforce payment in this action of the balance of the original purchase-money, represented by said bonds so due and unpaid.

The defendants claimed that the receipt in the deed from Henry Gitt to Abdiel F. Gitt was evidence that the purchase-money was paid in full; that there was no connection between said deed and the bonds in suit, and that after the lapse of more than twenty-eight years continuous possession (adverse as to the payment of purchase-money) since the date of the deed by themselves and their predecessor in title, the plaintiffs were not entitled to recover in this possessory action.

The plaintiffs offered in evidence the articles of agreement of March 1st 1849, between Henry Gitt and Abdiel F. Gitt; also the ten bonds in suit bearing the same date; and offered to prove that said bonds were given for the purchase money mentioned in the agreement. Objected to, because the agreement was merged in the deed and there was no connection between the deed and the bonds. Objection overruled. Exception.

The plaintiffs, in order to prove that the bonds in suit had never been paid, offered in evidence the will of Henry Gitt, the inventory of his estate which included the bonds in suit, and the record of proceedings in distribution and settlement of his estate, and also of the settlement of the estate of his widow and of his daughter, Mary Ann Gitt, to whose trustee the bonds in suit had been awarded as part of her distributive share in Henry Gitt's estate. Objected to, as irrelevant to affect the defendants, who were not parties to said proceedings. Objection overruled. Exception.

Henry Gitt died in December 1859; by his will, dated July 8th 1848, proved December 29th 1859, he placed a valuation upon his five several farms (the Oak Grove farm in question, containing 147 acres and 140 perches, being valued at $40 per acre, amounting to the sum of $5,915), and directed that each

of his five sons, in order of age, should have the right to choose a farm at the valuation, unless he should have sold a farm to any of his sons in his lifetime, and in such case he made the following provision :

" And if their farm is not paid for at my decease, all the bonds given thereon, and not paid, to be received by them, as cash, at the distribution of my estate amongst the heirs, unless the bonds should overrun their legacies, then the balance of the bonds to be paid, when due only, by them, the bonds to be a lien on said property, for which they were given, until paid."

The testator further provided that the legacy or distributive share of his daughter, Mary Ann Gitt, should " remain in the same five farms," interest to be paid to a trustee for her, to be appointed. The dower of his wife, Nancy, was also charged upon the five farms.

Letters of administration cum testamento annexo, upon the estate of Henry Gitt were granted to Amos Myers and Abdiel F. Gitt.

The widow elected not to take under the will.

Edmund C. Gitt was appointed by the Orphans' Court on April 21st 1860, trustee for Mary Ann Gitt, under her father's will.

The plaintiffs made the following offer : Plaintiff (Edmund C. Gitt) offers to prove that the bonds in controversy were received by him, as trustee for Mary Ann Gitt, from the administrators c. t. a. of Henry Gitt, dec'd, in a partial distribution of that estate made August 13th 1861, and as representing or on account of Mary Ann's interest in her father's estate ; that these bonds have been in his possession and in possession of his counsel and assignee from that time to this time, and *have never been paid*, except so far as the obligor is entitled to credits arising out of the settlement of the estate of Nancy Gitt and Mary Ann Gitt and Henry Gitt ; and further that these bonds were received by him as trustee with the interest on them, amounting to $2,384, including interest to Oct. 1st 1860.

Objected to : (1) that the witness is not competent to prove these facts; (2) that the evidence is inadmissible to affect the defendants in this suit and is irrelevant. Objections overruled. Exception.

The plaintiff testified in accordance with the facts stated in the offer.

The Auditor's report in the matter of the said partial settlements of the estate of the said Henry Gitt, deceased, confirmed April 11th 1864, contained, inter alia, the following :

"  .  .  . The bonds given by these sons for their farms are as follows, viz:

Abdiel F. Gitt to represent hand money.     .  .  . $2,000
Also 18 bonds of $200 each, payable from 1853 to
1870 inclusive.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  3,600
And 1 bond payable April 1st 1871.  .  .  .  .  .  115
                                                  ─────
*    *    *    *    *    *    *    *    *    5,715

Exceptions being filed to this account the parties and their counsel had several meetings and agreed  .  .  . "that for the purpose of making a final distribution of the estate it was agreed before the Auditor that all bonds and obligations given by the sons should be brought into the account, and be applied, as above stated, in payment of their respective shares, and that any surplus, not required for that purpose, should be rebated and distributed at cash value."  .  .  .  .  . " All bonds and obligations against the heirs are to be canceled and given up and final settlement made as of April 1st 1864."

Among the credits in the administrators' account were the bonds of Abdiel F. Gitt, due from 1863 to 1871, inclusive, $1,715.

The plaintiffs put in evidence the will of Nancy Gitt and the record of the proceedings for the settlement of her estate, and also the record of the settlement of Edmund C. Gitt's account as trustee of Mary Ann Gitt in the Common Pleas, wherein he charged himself with the identical sum representing the said bonds and interest received by him as trustee for her in the said distribution of the estate of Henry Gitt, deceased ($2.384), which account was duly confirmed December 21st 1875, after Mary Gitt's death on October 19th 1874; and testified that as such trustee he fully accounted for and paid to the parties entitled thereto, the money represented by said bonds, and that the said bonds had never been paid with the exception of certain credits to the obligor arising out of the settlement of the estates of Henry Gitt, Nancy Gitt and Mary Ann Gitt, and a credit of $106 since received as a dividend in the distribution of the estate of Abdiel F. Gitt.

All the above mentioned testimony, documentary and oral, produced on behalf of the plaintiffs was received by the court under objections and exceptions by defendants.

The defendants, Henry and Rufus A. Eichelberger, were examined as witnesses in their own behalf, but their testimony was not printed.  It appeared, however, from the charge of the court, that they did not deny knowledge of the existence of a lien on the premises in question for the payment of the unpaid purchase money at the time they took title from Abdiel F. Gitt.

The defendants presented inter alia, the following points:

1. "That the defendants, and A. F. Gitt, under whom they claim, and through whom they derive title, having been in actual, visible, continued, notorious, distinct and hostile possession of the premises in dispute for more than 21 years prior to the issuing of the writ in this suit, cannot now be disturbed in their possession by the plaintiffs, and the verdict should be in their favor."

Answer. "Our answer is, I know of no evidence in this case of the possession of the premises in dispute being hostile; and the question of the application of the statutory limitation to the facts in the case is reserved, as also in the fifth point."

2. The deed from Henry Gitt and wife, to A. F. Gitt, for the premises in dispute, executed and delivered December 21st 1853, with a receipt therein in full for the payment of the purchase money, accompanied by delivery of possession of the premises to A. F. Gitt; and a conveyance of the same premises by A. F. Gitt to Henry Eichelberger and Rufus A. Eichelberger, December 2d 1872, without any notice to them or knowledge by them of any claim for any of the purchase money by the representatives of Henry Gitt, until the issuing of the writ in this suit—constitute a waiver of any lien that might otherwise have been enforced. Equitable liens are not favored by our law; and after such great delay the plaintiffs, under the facts in this case, is held to have waived his right to relief."

Answer. "This point is not affirmed. The clause in the deed from Henry Gitt and wife to A. F. Gitt for the premises in dispute, 'Subject to the payment of $5,915, the purchase money,' must be regarded on the question of notice to Henry Eichelberger and Rufus A. Eichelberger. Equitable liens are not favored by our law."

3. "Henry Gitt, the grantor, having, by his receipt in his deed to A. F. Gitt, acknowledged the payment to him of the purchase money in full by A. F. Gitt, such receipt is good against him and all who derive title subsequently from him, and protects the defendants from any claim now being set up by the plaintiffs for any of the purchase money."

Answer. "This point is not affirmed. As we said in answer to the second point, the clause in the deed from Henry Gitt and wife to A. F. Gitt for the premises in dispute 'Subject to the payment of $5,915, the purchase money,' must be regarded on the question of notice to Henry Eichelberger and Rufus A. Eichelberger."

4. "The Auditor's report making a final distribution of the estate of Nancy Gitt, having been confirmed by the court April 17th 1864, and recorded, is a full and complete adjudica-

[Eichelberger *v.* Gitt.]

tion of all claim for this purchase money, when it provides,
inter alia, as follows: 'For the purpose of making a final
distribution of the estate, it was agreed before the Auditor that
all bonds and obligations given by the sons should be brought
into the account, and be applied as above stated, in payment
of their respective shares, and that any surplus not required
for that purpose should be rebated and distributed at cash
value,' . . . . 'All bonds and obligations against the
heirs are to be canceled and given up, and final settlement
made as of April 1st 1864.' It was notice to the defendants,
when they purchased the premises in dispute in December
1872, that all claim for this purchase money was satisfied and
extinguished."

Answer. "The question of fact raised by this point must
be considered with the other testimony in the case, and then
determined. It is contended as you have seen, on the one
hand, that this language in the Auditor's report does not refer
to these 10 bonds, and, on the other hand, it is said it does; so
that you must take all the testimony together in determining
the question of fact."

6. "Under all the evidence in the case, and the law applic-
able thereto, the plaintiff is not entitled to recover."

Answer. "This point is not affirmed."

The court submitted the case to the jury mainly to find
whether the bonds in suit had been paid, and if not, instructed
them to find for the plaintiffs, subject to the question of law
reserved, whether the statute of limitations was a bar to plain-
tiffs' recovery.

In the general charge the court said, inter alia :

"But if the Messrs. Eichelberger, who took this title from
A. F. Gitt in December 1872, with this title from Henry Gitt
to Abdiel, containing this clause subject to the payment of the
purchase money, had not found the articles of agreement,—if
they had gone to the Register's office to have inquired after the
settlement of the estate of Henry Gitt, the vendor, they would
have found the will of Henry Gitt; and there again they
would have seen that the testator refers to the conveyance of
this Oak Grove farm, among others, and provides by that will
that the bonds given for the payment of the purchase money
are to be a lien on said property for which they were given
until paid—the bonds were to be a lien on this property for
which they were given until paid."

Verdict for the plaintiffs for the land described in the writ,
to be released upon the payment by defendants of $3,001.91
with interest from date of verdict, within twelve months,
subject to the opinion of the court upon the question reserved
as above.

[Eichelberger v. Gitt.]

The court afterwards overruled a motion to enter judgment for defendants on the point reserved non obstante veredicto, and entered judgment for the plaintiffs on the verdict and the reserved point.

The defendants thereupon took this writ of error, assigning for error the admission of the documentary and oral evidence offered by the plaintiffs, as mentioned in the foregoing report; the answers to defendants' points; the portion of the charge above quoted, and the entry of judgment for the plaintiff on the point reserved.

*David Wills*, for the plaintiffs in error.—The whole case was burdened with, and the jury misled by incompetent and irrelevant evidence. Henry Gitt's will, which was proved long subsequent to his deed, could not operate as declarations in favor of the plaintiffs, his representatives, against the defendants who claimed under his grantee. The articles of agreement were merged in the deed, and inadmissible to charge the grantee, no fraud being alleged. The bonds and the deed could not be connected by parol evidence. The settlements of the estates of Henry Gitt, Nancy Gitt and Mary Ann Gitt, were inadmissible to affect the defendants, who were not parties to those proceedings. But the Auditor's report, we say, shows that all the bonds were settled and paid. If, when the defendants purchased from A. F. Gitt, in 1872, they saw the old deed (and there is no evidence they did), it would only have informed them that in 1853 it was executed with a clause appended, subject to the payment of $5,915 purchase-money. Twenty-nine years had elapsed since the execution of the deed, and this length of time was a bar to any action that might be brought for any unpaid purchase-money, and A. F. Gitt having been in undisturbed possession of the land during this long period of time, it was entirely safe to pay this purchase-money, and take possession of this farm. They could confidently rely on the rule of law that this deed contained a merger of all articles of agreement relating to the sale of this land by Henry Gitt to A. F. Gitt. The doctrine of equitable liens on land has never been admitted into Pennsylvania jurisprudence: Kauffelt *v.* Bower, 7 S. & R. 64; Semple *v.* Burd, 7 S. & R. 286; Megargel *v.* Saul, 3 Whart. 20; Hiester *v.* Green, 12 Wr. 96; Zentmyer *v.* Mittower, 5 Barr 403. The receipt in a deed is good against the grantor, and all who derive title subsequently from him: Penna. Salt Co. *v.* Neel, 4 P. F. S. 9. The plaintiffs are barred by laches; by the statutes of limitations (March 26th 1785, § 2, Purd. Dig. 927, pl. 3; April 27th 1855, § 7, P. L. 368); by the common law presumption of payment, by our adverse possession, and by estoppel: Hunt *v.* Wall, 25 Sm. 413; Campbell

[Eichelberger *v.* Gitt.]

*v.* Braden, 15 Norris 388; McCall *v.* Webb, 7 Norris 150; Strimpfler *v.* Roberts, 6 Harris 283; Pryor *v.* Wood, 7 Cas. 142; Pratt *v.* Eby, 17 P. F. S. 396. This is just such a stale claim as the policy of the law, the Limitation Acts, and the above decisions will turn out of court.

*R. G. McCreary,* for the defendants in error.

Mr. Justice Trunkey delivered the opinion of the court, November 12th 1883.

Henry Gitt conveyed the land to Abdiel F. Gitt, on December 21st 1853, "subject to the payment of five thousand nine hundred and fifteen dollars, the purchase money." These are apt words for imposing a lien, the grantee took the estate, conditioned for the payment of a certain sum, and performance of the condition may be enforced by action of ejectment : Strauss' Appeal, 49 Pa. St. 353.

When A. F. Gitt sold the land, the purchasers saw on the face of the title the condition upon which it was held by the vendor, and they cannot complain of want of notice. The formal receipt for the purchase-money, being without date, is presumed to be of the date of the deed, and, therefore, is not prima facie evidence that the lien so plainly expressed, was satisfied ; it is of no greater value than the acknowledgment of payment of the consideration written in the body of the deed. If the purchasers had made inquiry of the proper parties they could have learned whether the money was actually paid, and they stand in the vendor's shoes, holding the land as if they had bought with express notice of the amount remaining unpaid. The rule is, that whatever puts a party on inquiry amounts to notice, where the inquiry becomes a duty, as in the case of a purchaser of land, and would lead to a knowledge of the requisite fact by the exercise of ordinary diligence and understanding.

Possession has been held by A. F. Gitt and his grantees under the terms of the deed from Henry Gitt, and the statute of limitations is as far from applying, as if they had held under articles of agreement for sale and purchase of the land. There is no pretence of evidence of possession other than upon the condition named in the deed. While holding as purchasers, subject to payment of the purchase-money, they cannot acquire a title under the statute, and the defendants' first point was rightly refused.

It is true, as the defendants allege, that the contract dated March 1st 1849, between Henry Gitt and A. F. Gitt, was merged in the deed, and that no action will lie upon it. But it is pertinent evidence upon the question whether the bonds

[Eichelberger *v.* Gitt.]

upon which the plaintiff founds his action, were part of the purchase money. The contract and bonds are of same date, it provided for such bonds, that they should be a lien on the land till paid, that two thousand dollars should be paid at the distribution of Henry Gitt's estate, and, contingently, that A. F. Gitt should have so many of the last bonds as would equalize his legacy with the others. In connection therewith the will was competent, not to show a lien on the land, but to show the legacies, and to be followed by the acts of A. F. Gitt as one of the administrators cum testamento annexo. He made and filed an inventory of the personal estate of Henry Gitt, deceased, which included these bonds. In the Auditor's report of distribution, confirmed April 11th 1864, all the bonds were taken into the account and settled, except the ten in controversy; and there is oral testimony that in 1861 he gave these ten to E. C. Gitt, trustee of Mary Ann Gitt, one of the legatees of Henry Gitt, deceased. The accounts and distributions of the estates of Nancy Gitt and Mary Ann Gitt were received, not to charge A. F. Gitt, but to show the sums allowed him as credits upon the bonds, the subject of this action. A. F. Gitt was a party to the inventory, administrator's account, and proceedings before the Auditor in the settlement of Henry Gitt's estate. We are not convinced that there was error in the receiving of testimony. It rested on the plaintiff to satisfy the jury by sufficient evidence that the bonds were a part of the purchase money and the sum that remained unpaid.

Nor was it error to refuse the defendants' fourth point. The question of fact was properly submitted to be determined upon the oral and written evidence. The agreement recited in the Auditor's report, relative to the cancellation and giving up of bonds for the purpose of final distribution of Henry Gitt's estate, cannot be treated as notice to purchasers of satisfaction of the lien for purchase money, for the report does not show that all the bonds were satisfied.

The lien created by the deed was for a certain sum. Other evidence shows that bonds were given for same debt, payable at different dates, the last in 1871. Eleven of the bonds, amounting to twenty-one hundred and fifteen dollars, including two that are in this suit, became due within twenty-one years preceding the bringing of this action. In 1864, A. F. Gitt accounted for and settled all the bonds, except the ten he had given to the plaintiff. Within twenty-one years the credits were made upon the bonds held by the plaintiff for the distributive shares due A. F. Gitt in the estate of Nancy Gitt and the estate of Mary Ann Gitt. If it be conceded that the Act of April 27, 1855, P. L. 368, should be so liberally construed as to apply to all kinds of charges upon real estate to which

the ordinary presumption of payment applied, it cannot avail the defendants as a bar to the plaintiff's recovery. The period of limitation runs from the time the charge was due and payable. If it began against each bond when it became due, the evidence of claim by and of payment to E. C. Gitt on account of the bonds which he held, is too strong for the court to rule that any of them are barred by the statute. Had the court charged, as the defendants requested, that there can be no recovery on the bonds due twenty-one years before the writ issued, it would have been error, for that would have taken the question of payment or claim on account of the bonds, within said time, from the jury.

Judgment affirmed. The time for payment of the money extended till January 21st 1884.