Rebecca Bonebrake *v.* Benjamin R. Summers, Levi C. Row, Christian Avery Miley and Samuel S. Hess, Appellants.

*Deeds—Reservation of charge on land—Maintenance—Habendum—Assignee's sale—Discharge of liens—Act of February* 17, 1876.

The habendum of a deed from D. and R. contained the following words: "Nevertheless the maintenance of D. and R., his wife, during their natural life is a part of the consideration herein mentioned, therefore this title does not become clear of all incumbrance until at the death of the said D. and R." *Held*, (1) that the words charged upon the premises conveyed a maintenance for the grantors, and that this charge was a continuing lien; (2) that the grantors had the right to reserve such charge; (3) that such a charge is not discharged by a judicial sale.

*Assignment for creditors—Sale of land—Discharge of liens—Act of February* 17, 1876.

A charge for maintenance reserved in a deed by the grantor is not discharged by an assignee's sale under the act of February 17, 1876, for the benefit of the grantee's creditors.

Argued March 7, 1899. Appeal, No. 316, Jan. T., 1898, by defendants, from decree of Superior Ct., March T., 1898, No. 11, 8 Pa. Superior Ct. 54, affirming decree of C. P. Franklin Co., equity docket, vol. 2, p. 263, on bill in equity. Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity to enforce a charge on land.

STEWART, P. J., found the facts as follows:

1. Daniel Bonebrake and Rebecca, his wife, by deed dated August 30, 1890, conveyed to Abraham L. Smith a tract of land situate in Quincy township containing eighty-eight acres and seventy-four perches. The consideration expressed in the deed is $3,000. In the habendum occurs this clause, "Nevertheless the maintenance of Daniel Bonebrake and Rebecca his wife, during their natural life, is a part of the consideration herein mentioned, therefore this title does not become clear of all incumbrance until at the death of the said Daniel Bonebrake and Rebecca his wife."

2. At the time of this conveyance there were several liens

of record against the property, two judgments each of $500, which Smith personally assumed, a mortgage for $1,300 in favor of Levi C. Row, one of the defendants, and a judgment in favor of Rebecca Bonebrake, the plaintiff, for $3,000. Subsequently and during the ownership of Smith other liens were acquired.

3. On March 23, 1895, Smith, the grantee, made a general assignment of all his property, including the land conveyed to him by Bonebrake, in trust for the benefit of his creditors. Pursuant to an order of the court of common pleas his assignee sold said tract of land; fifty-nine acres and thirty-six perches, to Benjamin R. Summers and Levi C. Row for $2,339.38, seventeen acres and twenty-two perches to Christian Avery Miley 'for $119.96, and twelve acres and sixteen perches to Samuel S. Hess for $133.10, which sales were duly confirmed January 28, 1896, and deeds were made, executed and delivered by the assignee to the several purchasers respectively. In each of these deeds it is expressly stated that the property is conveyed subject to the rights of Rebecca Bonebrake therein, under the deed from Bonebrake and wife to Smith.

4. At the sale of the land by the assignee of Smith it was publicly announced that the land would be sold subject to the charge contained in the deed from Bonebrake and wife to Smith, and so much of the deed as referred to the charge was publicly read; but it does not appear affirmatively that this was in the hearing of any of the defendants. I cannot find as a fact from the evidence that before the sale was actually made any of the defendants had knowledge of the existence of the charge in the deed.

5. On March 23, 1895, when Smith assigned for the benefit of creditors, the amount of the several liens which were in existence when he acquired the property from Bonebrake remaining unpaid was $1,415, with interest from April 1, 1894, and costs. The judgment for $3,000, in favor of Rebecca Bonebrake, had been marked satisfied and paid on the record by Mrs. Bonebrake March 2, 1892.

6. Daniel Bonebrake and wife resided with Smith, their grantee, upon the farm they conveyed to him, and were supported and maintained by him. Bonebrake died in the fall of 1892. His widow, Rebecca, remained with Smith, as a mem-

ber of his family, until March, 1895, when Smith, having assigned for the benefit of his creditors, left the farm and moved to the state of Maryland. Thereafter she continued on the farm, residing with the tenant of the assignees, until in February, 1896, when she went to Maryland to reside again with Smith. She has remained in his family until the present, under a contract to pay to Smith $10.00 a month for her boarding and an allowance for house rent, if she became able. Mrs. Bonebrake has no estate of any kind apart from her interest under this deed of conveyance to Smith; she is seventy-six years old. Mrs. Smith, wife of A. L. Smith, the grantee, is her grandchild, and nearest living relative. A. L. Smith, the grantee, has no estate.

7. Rebecca Bonebrake, widow of Daniel Bonebrake, presents this her bill asking that the several purchasers of the land from Smith's assignee—the defendants herein—be required by a decree of this court to provide and furnish for her out of the land so conveyed them a suitable maintenance, alleging that such maintenance was made a fixed charge and lien upon the land by the terms of the conveyance to Smith, which was not discharged by the assignee's sale, but still subsists and is enforceable against the land conveyed.

8. The answer of the defendants raises no question of fact, but denies their liability to the plaintiff, on the ground that the clause in the deed from Bonebrake and wife to Smith, which the plaintiff insists is a charge upon the land, " does not create any charge or lien upon the lands described in and conveyed by said deed, but at most creates a personal charge or debt against the grantee named therein; that the title which passed by said (assignee's) sale to the purchasers, is clear of any lien or incumbrance supposed to have been created thereupon by the deed to Abraham L. Smith." The answer further denies the jurisdiction of equity in the premises.

The court entered the following decree:

And now, June 1, 1897, it is ordered, adjudged and decreed that the lands purchased by Benjamin R. Summers, Levi C. Row, Christian Avery Miley and Samuel S. Hess, the above named defendants, from Michael G. Minters, assignee of A. L. Smith, which was embraced in the deed of conveyance from Daniel Bonebrake and wife to the said A. L. Smith, dated

August 30, 1890, and set forth in the plaintiff's bill, is subject to the provision for maintenance contained in said deed of conveyance, and the said maintenance now of Rebecca Bonebrake is of the monthly value of $12.50, and that the said defendants owe to the said Rebecca Bonebrake $12.50 for each and every month since the 1st day of March, 1896.

And it is further adjudged and decreed that the said Benjamin R. Summers and Levi C. Row pay forthwith to the said Rebecca Bonebrake the sum of $157.88; that the said Christian Avery Miley pay forthwith to the said Rebecca Bonebrake the sum of $8.10, and that the said Samuel S. Hess pay forthwith to the said Rebecca Bonebrake the sum of $9.02, which payments shall be in full of her maintenance to May 1, 1897.

And it is further adjudged, ordered and decreed that the said Benjamin R. Summers and Levi C. Row pay to the said Rebecca Bonebrake on the 1st day of August, 1897, the sum of $33.85; that the said Christian Avery Miley pay to the said Rebecca Bonebrake on the 1st day of August, 1897, the sum of $1.73, and that the said Samuel S. Hess pay to the said Rebecca Bonebrake on the 1st day of August, 1897, the sum of $1.82, and that they each pay to her a like amount at the end of every three months thereafter so long as she, the said Rebecca Bonebrake, shall live.

And it is further ordered, adjudged and decreed that the said defendants pay the costs of this proceeding.

A full report of the case will be found in Bonebrake v. Summers, 8 Pa. Superior Ct. 54.

*Error assigned* was in affirming the decree of the court of common pleas.

*O. C. Bowers*, with him *W. U. Brewer* and *William Alexander*, for appellants.

*W. Rush Gillan*, with him *Walter K. Sharpe*, for appellee.

OPINION BY MR. JUSTICE DEAN, October 6, 1899:

After the concise and clear findings of fact by the learned trial judge in the common pleas, a restatement of them here is wholly unnecessary.

The court held that these words in the habendum of the deed, " Nevertheless the maintenance of Daniel Bonebrake and Rebecca his wife, during their natural life, is a part of the consideration herein mentioned, therefore this title does not become clear of all incumbrance until at the death of the said Daniel Bonebrake and Rebecca his wife," expressly charged upon the premises conveyed, a maintenance for the grantors, and intended this charge to be a continuing lien.  We think this clause is susceptible of no other interpretation.  This being so, is the intention defeated by conclusions of law from the undisputed facts?  At the date of the deed there were prior liens against the grantors which bound the land, and which their grantee assumed.  Other liens were entered subsequent to the deed, and the grantee made an assignment for benefit of creditors.  Public sale was made of the land by the assignee for the benefit of creditors.  Not only was the deed, embodying the continuing charge, of record, but public notice to bidders was given at the sale, that the land was sold subject to this charge ; further, the purchasers accepted their deeds with the express stipulation in them, that the land is subject to it.  That parties may make such a charge is held in Hiester v. Green, 48 Pa. 101, by this Court on a review of all the authorities. This was reiterated in Strauss's Appeal, 49 Pa. 358.  But, then, it has also been settled by Luce v. Snively, 4 Watts, 397, and many subsequent cases ending with Rohn v. Odenwelder, 162 Pa. 352, that the purchaser at a judicial sale shall hold the land free from all liens for the debts, not only of the one whose land is sold, but of the debts of previous owners from or through whom he derived title.

To this rule, however, there are exceptions, such as the lien of first mortgages, and those liens which are incapable of computation because of uncertainty ; in this last is placed a charge upon land for the maintenance of one or more persons during life.  This certainly includes the charge in question, because it is incapable of computation, and, although a debt in favor of the previous owner, it was not discharged by this sale, and the court properly so held.  It will be noticed the purchase money was in excess of the liens existing at the date of the deed creating the charge.

But it is urged that, under the act of February 17, 1876,

relating to sales of land by assignees, this sale being under that act, the purchaser, by the express words of the act, takes the land discharged from all liens except first mortgages, ground rents and purchase money due the commonwealth; that this class of judicial sales stands by itself, and must be controlled, not by the decisions of the courts, but by the words of the only act authorizing the sale. We do not think the act should have the interpretation put upon it by the learned counsel for appellant. The act of 1876 only excepts from discharge the very liens excepted by the act of April 6, 1830, and while literally, the general words could be applied to cover this lien, yet such legislative intent is far from manifest. In fact, to ascertain the amount of this lien is utterly impracticable. We will not assume that the legislature intended to do that which in most cases would work gross injustice. Nothing more was intended by the act than to turn an assignee's sale of property for the benefit of creditors into a judicial sale. It was not its purpose to abrogate any part of the law as it then stood, applicable to judicial sales generally, and place the purchasers at such assignees' sales in a more favorable situation than those at sheriff's sales. Legislative enactments are to be expounded as near to the use and reason of the prior law as may be; it is not to be presumed that the legislature intended to make any innovation upon the common law, further than absolutely required: Cadbury v. Duval, 10 Pa. 265. This act was passed to remove doubts in the minds of purchasers, and place titles on the same footing as those at other judicial sales, the rights of purchasers at which sales had been settled by the prior law; and this is all that was intended.

We concede that on this last point the case is a very close one, and we are not unanimous, but as a majority concur in the opinion of the common pleas, which has been affirmed by the Superior Court, we affirm the judgment. We can add nothing of value to what has been said by the learned judge of the common pleas and by the Superior Court. There is nothing of merit in the other assignments, and the judgment is affirmed on the opinion of the court of common pleas.