## Norris' Petition

*Raymond E. Brown* and *Matthew A. Crawford,* for petitioner.

*Smith M. McCreight* and *Alex S. Scribner,* for respondents.

LONG, P. J., March 24, 1942.—This matter comes before the court on the petition of Annie Norris for an order of support by virtue of the last will and testament of Robert Norris, deceased. . . .

Robert Norris was a reputable and thrifty farmer. He owned a farm containing 164 acres, which he devised to his two sons, John M. and James C. Norris. He excepted and reserved to his wife, Jane Norris, a house and garden on said farm for her use and occupancy "as long as she desired to live therein". After his wife ceased to live in said house, then his two unmarried daughters, including Annie Norris, the petitioner, were to have the same house and garden to live in and occupy free of all taxes as long as they remained single and unmarried. During the time his wife lived on the farm, she was to have "from and out of the same a good comfortable living, pasture for a horse and two cows, stable room and their keep off said farm." All of the foregoing was to be a charge upon his farm. He then directed that his two daughters, one of whom is Annie Norris, the petitioner, as long as they remained single and desired to live on the farm "are to have a good comfortable living out of the farm." He said that "this is also a charge upon the land." John M. and James C. Norris were named executors of his will. His wife, Jane Norris, survived him. Thereafter, James C. Norris, one of the devisees, and his wife conveyed their undivided interest in the farm to John M. Norris, the other devisee and executor, each of whom recognized the duties the land owners owed to their mother and two sisters, respectively, by incorporating in said deed the following:

"Under and subject to a maintenance charge upon the land herein conveyed the same as is contained in the last will and testament of Robert C. Norris, deceased."

John M. Norris and wife conveyed 60 acres of said land to Howard Brubaker and within two weeks from the date of said conveyance Jane Norris, the widow, Mary Norris and Annie Norris, daughters, respectively, of Robert Norris, deceased, jointly executed, in consideration of a bond in the sum of $500 given by John M. Norris, a release "from all liability . . . claims, demands and charge or lien whatsoever for or on account of all the charge mentioned" in the last will of Robert Norris, deceased, upon the 60 acres of land conveyed to Howard Brubaker.

Annie Norris continued to live in the old house occupied by her father and mother situate on said devised land and made her home therein. She did some visiting and worked. Her brother, John M. Norris, died testate on March 14, 1914, seized and possessed of the remainder of the Robert Norris farm, to wit, 104 acres and 120 perches, and devised said land to his widow and children, all the respondents named herein. The present owners of the land have not furnished any food to petitioner. She was asked:

"Q. Did they give you any potatoes?

A. The only way I got them, I asked for them. I had to go out and pick them up and asked someone to bring them in. They wouldn't do it.

Q. When did you get the last potatoes?

A. A year ago last fall. This summer I got two quart pans full twice, that's all I got.

Q. Are you able to earn your own living?

A. I don't think I am any more. I have, but I can't now. . . ."

Petitioner contends that her father created a continuing charge or lien on the land owned by respondents and that they and their predecessors in title accepted title thereto with knowledge thereof and that said

charge entitles her to have "a good comfortable living out of the land."

Respondents contend that no demand has been made by petitioner upon them and that they have furnished nothing to petitioner within a period of 21 years; consequently, that her claim is barred by the statute of limitations.

Unquestionably, Robert Norris, the testator, respected his wife and daughters and was determined that they should have a home on his farm and "a good comfortable living out of the same." He intended that "this is also a charge upon the land"; that, regardless of who may be the owner thereof during the lifetime of his widow and the two daughters who remained single and desired to live on said farm, they had a maintenance lien thereon and should have "a good comfortable living out of the same." He intended that at no time should the public be compelled to keep his wife and daughters. The language used, "a good comfortable living", provided for petitioner's maintenance and constituted a charge on the land devised: Gibson's Appeal, 25 Pa. 191; Baylor's Estate, 249 Pa. 5. Such charge was in the nature of a debt, which the debtor, in order to discharge himself of, must seek the creditor, and perform, or offer to perform, his obligation: Steele's Appeal, 47 Pa. 437.

Was the legacy determinate? If so, is it barred by the statute of limitations? Testator naturally took into consideration that costs of living fluctuate from day to day and year to year; that they change because of inflation and depression, the state of health of the objects of his bounty, and divers other contingencies.

In Walters' Estate, 197 Pa. 555, 558, the Supreme Court, while discussing the legacy, ". . . and, further, Lucinda H. Walters to have her living in the old homestead so long as she remains unmarried and does not charge wages for services rendered", held that such legacy was not determinate.

The Supreme Court in Pennsylvania Trust Co. v. Deininger et al., 315 Pa. 278, 281, said:

"While, generally, liens of pecuniary legacies, determinate in value, are discharged by sheriff's sale of the land on a judgment against the devisee, certain exceptions, necessary to carry out the intentions of a testator, or grantor, have been developed and applied. In Washburn's Est., 187 Pa. 162, 165, 40 A. 979, the subject was considered and we said: 'The exceptions to the rule that a sheriff's sale discharged liens created by deed or will were said in Stewartson v. Watts, 8 Watts, 392, to be (1) where liens are created by last wills and testaments as permanent provisions for wives and children; (2) where from the nature of the encumbrance it will not readily admit of valuation; (3) where it is plain they were intended to run with the land. In Hiester v. Green, 48 Pa. 96, it was said that under one or the other of these heads it was manifestly intended that every lien should fall which was to be saved, unless by statute, from the ordinary effects of a sheriff's sale. These exceptions to the rule have since been recognized in a number of cases, among them, Helfrich v. Weaver, 61 Pa. 385, . . .' " 94 A. L. R. 371 n.

The Supreme Court in Eichelberger v. Gitt, 104 Pa. 64, while discussing a lien which had been created for a certain sum, held (p. 65):

"Under the Act of April 27, 1855 (P. L. 368), the period of limitation runs from the time the charge became due and payable."

In the instant case the charge was for an indeterminate time, substance, or amount. It created a contract between the testator and the owner of the real estate, which continued from and immediately after the death of testator and the acceptance of the devise by the devisee and his successor in title for and during Annie Norris' residence on the farm as long as she remained a single woman, so as to require the owner

thereof to furnish her a good and comfortable living out of the same.

In McCay v. McDowell, 80 Iowa 146, 45 N. W. 730, it was held that an agreement for a valuable consideration to support plaintiff and furnish her a home during her life is a continuing contract and refusal to support is a continuing breach thereof. See Riddle v. Beattie, 77 Iowa 168, 41 N. W. 606, Gaffney v. Young et al., 200 Iowa 1030, 205 N. W. 865, 867, and Barclay v. Grove et al., 9 Sadler 153. The effect of the statute of limitations on a continuing contract was fully discussed by the Supreme Court in Van Sciver v. Van Sciver, 337 Pa. 390, 395. There the court, while construing a separation and maintenance agreement between husband and wife, executed in 1926, where no demand was made until 1938, and the bar of the statute of limitations was raised, said: "It is argued by appellee that the alleged breach of the contract was at the date of the execution of the trust in 1926, more than six years before suit, and, therefore, it cannot be maintained. As it is a continuing contract, the statute of limitations does not apply (37 C. J. 853) at least as to the sums due within six years."

A presumption of payment does not arise until the expiration of 21 years from the time the legacy is payable. The courts, while considering the Limitations Act of April 27, 1855, P. L. 368, placed legacies charged on land in two classes: (1) Where they are definite and determinate; and (2) where they are indefinite, indeterminate, not readily subject to valuation, or there is an uncertainty as to when the same are due and payable. In the first class it was held that under the Act of April 27, 1855, P. L. 368, section 7, if a person claiming payment of a charge or lien on real estate is unable to show either a claim or demand for payment made by him on the owner of such real estate, or a payment upon or acknowledgment of the existence of such lien or charge by such owner within twenty-one years,

the act operates to raise a conclusive presumption of the release or extinguishment of the demand and declares that it shall thereafter be irrecoverable: Coulter v. Line, Exec., 262 Pa. 95; Stephenson's Estate, 256 Pa. 487; Wingett's Appeal, 122 Pa. 486.

In the second class, like the instant case, where the primary object of testator was to secure for his daughter the fruits of his bounty, "a good comfortable living for life if she remained single", it is fair to presume that he intended she should have no more than nor no less than a comfortable maintenance, measured by the station, habits, and tastes of testator and the daughter (see Steele's Appeal, supra); and that such provisions should continuously remain a charge upon the land devised (see Gibson's Appeal, supra); and be such lien as would not be barred by the statute of limitations or discharged by a sheriff's sale of the land: Walter's Estate, supra; Van Sciver v. Van Sciver, supra; 94 A. L. R. 371 n., and cases cited therein.

The land is her surety. Her remedy is that of a creditor in case of default and is exclusively in the orphans' court: Craven v. Bleakney, 9 Watts 19; Walker v. Gibson et al., 164 Pa. 512; Baylor's Estate, supra; Pennsylvania Trust Co. v. Deininger et al., supra; Estate of Stephen Clark, 99 Pa. Superior Ct. 490; and as beneficiary of a contract made between her father, Robert Norris, and respondents, who accepted the real estate bound by the provisions thereof, the same is a continuing obligation and lien created as a permanent provision for petitioner, which, of its very nature, will not readily admit of valuation and it is plain that testator intended should run with the land until fully paid or satisfied.

Respondents and their predecessors in title have permitted Annie Norris to continue to live in the dwelling house described in the will. To this extent they have complied with the intention of testator. They have performed a portion of the contract and although they

are trustees for the purpose of seeing that petitioner has a good comfortable living out of the farm, they admit that they have wholly failed so to provide for her, which failure they allege is solely the result of her laches in failing to make demand. Respondents are honest people. Everything indicates that they would have fully carried out the intention of testator and, in addition to having permitted petitioner to reside in the dwelling house, had she demanded it, would have furnished her a good comfortable living out of the land.

Therefore, the sole question is:

Is the charge upon the land created by Robert Norris, the testator, in favor of his daughter, Annie Norris, barred by the statute of limitations?

This must be decided in favor of petitioner.

### Conclusions of law

1. That testator intended to create and did create a charge or lien upon the land described in the will in favor of his single daughter, Annie Norris.

2. That said lien constitutes a continuing contract or obligation against respondents' lands herein to furnish to Annie Norris a good and comfortable living out of the lands devised.

3. That respondents herein named have failed, neglected, and refused to carry out their part of said contract and obligation.

4. That considering the intention of testator, as the same is expressed in his will, his station in life at that time, the petitioner's station in life, her age, health, inability to earn a livelihood, cost of living, the land, the acreage thereof and its productivity, a fair and reasonable sum equivalent to a "good comfortable living out of the same" is $35 per month, beginning December 1, 1941, without prejudice on the part of petitioner or respondents to offer further testimony in connection therewith.

Therefore, we are compelled to make the following

## Order

And now, March 24, 1942, after due and careful consideration, it appearing that the land owned by respondents is bound by a maintenance lien thereon "to have a good comfortable living out of the same" in favor of Annie Norris and she having, on December 1, 1941, made demand therefor on respondents, which demand has been refused by them, it is ordered, adjudged, and decreed that respondents named in the petition, owners of the real estate described therein, shall pay or furnish to Annie Norris, while she lives on said farm, the sum of $35 per month, beginning December 1, 1941, or what is equivalent to a good comfortable living out of said land; that such sum or amount shall constitute a lien against the land described in the petition and citation. This order is made without prejudice on the part of petitioner and respondents, respectively, to offer further testimony in connection therewith. Respondents shall pay the costs of this proceeding.